Margaret ALESSI, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Barry H. BERACHA, Jerry E. Ritter, James Iglesias, J. Joe Adorjan, Timothy P. Smucker, Peter F. Benoist, Maxine K. Clark, E. Byron Glore, Jr., William E. Stevens, and the Earthgrains Company, Defendants.

No. CIV.A.02–1477 SLR.

United States District Court, D. Delaware.

Jan. 21, 2003.

Carmella P. Keener, Esquire of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, for Plaintiff. Of counsel: Robert I. Harwood, Esquire, Daniella Quitt, Esquire and Joshua David Glatter, Esquire of Wechsler Harwood, LLP, New York City.

Jesse A. Finkelstein, Esquire and Thad J. Bracegirdle, Esquire of Richards, Layton & Finger, P.A., Wilmington, DE, for Defendants. Of counsel: David Schiavone, Esquire and Christopher King, Esquire of Sonnenschein, Nath & Rosenthal, Chicago, IL.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On July 6, 2001, plaintiff Margaret Alessi, on behalf of herself and all others similarly situated, commenced a class action in the Court of Chancery of the State of Delaware against defendants alleging breaches of fiduciary duties. Defendants Barry H. Beracha, Jerry E. Ritter, James Iglesias, J. Joe Adorjan, Timothy P. Smucker, Peter F. Benoist, Maxine K. Clark, E. Byron Glore, Jr., William E. Stevens and the Earthgrains Company removed the case to this court pursuant the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(2). Presently before the court is plaintiff's motion to remand the case back to Chancery Court. (D.I.3) This court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

Defendant the Earthgrains Company ("Earthgrains") was a Delaware corporation with its principal place of business in St. Louis, Missouri. (D.I. 1, Ex. 1 at 2) Earthgrains was a publicly traded company formed as a spin-off from the Anheuser–Busch Companies, Inc. in March 1996. (*Id.*) Earthgrains operated packaged fresh-bakery and refrigerated-dough businesses in the United States and Europe, and was the second largest packaged bread baker in the United States. (*Id.*) As a result of the spin-off from Anheuser–Busch, many stockholders of Earthgrains held fewer than 100 shares. (*Id.*) Defendant Barry H. Beracha ("Beracha") was the CEO and Chairman of the Board of Directors of Earthgrains during the period relevant to this action. The remaining named defendants were all members of the Board of Directors of Earthgrains during the period relevant to this action.

Plaintiff states that in April 2001, Beracha, as CEO of Earthgrains, entered into negotiations with executives from the Sara Lee Corporation ("Sara Lee") to discuss the acquisition of Earthgrains by Sara Lee. (*Id.* at 6) Plaintiff contends that in order to reduce the number of small shareholders to facilitate an acquisition, Earthgrains announced a buyout program on May 18, 2001. (*Id.* at 5) The buyout program allowed stockholders who held less than 100 shares of Earthgrains as of May 4, 2001, to pay a $1.25 per share (up to $30) processing fee and, in return, they would receive a uniform market price per share. (*Id.*) The buyout program was administered by Georgeson Shareholder

Communications, Inc. and was set to expire on June 20, 2001. (*Id.* at 5–6)

Plaintiff asserts that on June 29, 2001, Earthgrains and Sara Lee entered into a merger agreement and on July 2, 2001, Sara Lee announced that it would purchase Earthgrains for approximately $1.7 billion, or $40.25 per share. (*Id.* at 6) On July 6, 2001, plaintiff filed a lawsuit in the Delaware Chancery Court against defendants alleging that they breached their fiduciary duties, including the duty of disclosure, to all stockholders who participated in the buyout program between May and June 2001.[1] (*Id.* at 7)

In the complaint, plaintiff alleged that defendants' failure to disclose the ongoing merger talks with Sara Lee to Earthgrains shareholders during the buyout program, was a violation of defendants' fiduciary duties and deprived those stockholders who received between $25–$27 per share through the buyout, the higher price they would have received under the Sara Lee merger. (*Id.*) On October 30, 2001, defendants moved to dismiss plaintiff's complaint. On August 26, 2002, while the motion to dismiss was pending, the Court of Chancery sent a letter to the parties directing defendants to remove the case to federal district court for a determination of whether SLUSA preempted any of plaintiff's claims. A notice of removal was filed by defendants with this court on September 6, 2002. (D.I.1)

### III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214

(1941). A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.*, 809 F.2d 1006 (3d Cir.1987); *Zoren v. Genesis Energy, L.P.*, 195 F.Supp.2d 598, 602 (D.Del.2002).

The existence of a federal question rests upon the allegations of a "well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A plaintiff, therefore, is described as the "master of the complaint" and a defendant may not remove a state law claim, even on federal preemption grounds, if the plaintiff pleads only state law claims. *Id.* The doctrine of "complete preemption," however, stands as an exception to the well-pleaded complaint rule. It holds that "once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393, 107 S.Ct. 2425. With these principles in mind, the court accepts as true all allegations in plaintiff's complaint to decide whether defendants have established that the case was properly removed and, therefore, is preempted under SLUSA.

### IV. DISCUSSION

#### A. Overview of the Securities Litigation Uniform Standards Act ("SLUSA")

In 1995, Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in response to a perceived harm to markets from frivolous private securities

---

1. On August 14, 2001, Sara Lee completed its acquisition of Earthgrains.

lawsuits. H.R. Conf. Rep. No. 104–369, at 31–32 (1995). The Reform Act sought to deter these "strike suits" by imposing more stringent procedural and substantive requirements for private securities actions in federal courts. *See Gibson v. PS Group Holdings, Inc.,* 2000 WL 777818, *2–3 (S.D.Cal. March 8, 2000). In response, plaintiffs counsel recognized state laws required no such heightened standards and began filing record numbers of securities actions in state courts. H.R. Conf. Rep. No. 105–803, p. 14–15 (1998); *see also Lander v. Hartford Life,* 251 F.3d 101, 108 (2d Cir.2001). To close this "loophole," Congress enacted SLUSA, which designates the federal courts as the exclusive venue for nearly all such claims. *See Green v. Ameritrade Inc.,* 279 F.3d 590 (8th Cir.2002). SLUSA preempts certain types of securities class actions and provides that they cannot be maintained in any state or federal court in the United States. Under its preemption provision, SLUSA permits removal and then dismissal of certain securities class actions:

> (1) Class Action Limitations: no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by a private party alleging
>
> > (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

SLUSA, therefore, mandates removal and then dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security. *See Prager v. Knight/Trimark Group, Inc.,* 124 F.Supp.2d 229, 231–33 (D.N.J.2000). In enacting SLUSA, Congress evinced a clear intent toward broad application of the Act. *See Gibson supra; Bertram v. Terayon Commun.,* 2001 WL 514358 (C.D.Cal. Mar. 27, 2001).

Notwithstanding the Act's broad limitation on securities class actions, SLUSA also contains a savings clause, known as the "Delaware carve-out" exception, which preserves certain "covered class actions." Under section 78bb(f)(3), a "covered class action" based upon the statutory or common law of the State in which the issuer is incorporated may be maintained if it involves:

> (I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or
>
> (II) any recommendation, position, or other communication with respect to the sale of any issuer that
>
> > (aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> >
> > (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A)(ii).

If, following removal from state court under section 78bb(f)(2), a federal court determines that the action is preserved under this savings clause, the federal court must remand the action to state court. 15 U.S.C. § 78bb(f)(3)(D) ("In an action that has been removed from a State court pursuant to paragraph (2), if the Federal

court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.").

## B. Plaintiff's Motion to Remand

■ The parties do not dispute that this is a covered class action under SLUSA. Rather, they disagree as to whether either of the two Delaware carve-out exceptions apply. Plaintiff argues that her action is subject to the second Delaware carve-out exception and, therefore, not preempted by SLUSA. The second Delaware carve-out exception has three requirements. A covered class action may be maintained under SLUSA if it involves: (1) any recommendation, position, or other communication with respect to the sale of any issuer; (2) that is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (3) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

In support of her argument, plaintiff first cites to the legislative history of SLUSA noting that there is a need to exempt "shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate actions, that is found in the law of some states, most notably Delaware." S. Rep. 105–185, at 6 (May 4, 1998). Plaintiff asserts that the gravamen of her complaint is the breach of defendants' fiduciary duties, the exact type of claim preserved under SLUSA.

Next, plaintiff argues that the fact that Earthgrains did not repurchase the stock for itself is not determinative. She argues that defendants established the parameters of the buyout program, announced the program, and retained the right to extend the program if it desired. Therefore, the action satisfied the second requirement of the exception.

Plaintiff then argues that the buyout program involved a "recommendation, position, or other communication" concerning a stockholder's decision to act in response to corporate action, satisfying the first and third requirements of the exception. Plaintiff argues that finding to the contrary would "exalt form over substance." In support of this argument plaintiff cites a press release by defendants in connection with the buyout. Plaintiff asserts that the press release suggested benefits to participants including reduced commission structures and easier liquidity for small stockholders.

Defendants argue that neither of the Delaware carve-out exceptions apply. They first assert that the transaction did not involve "the purchase or sale of securities by the issuer" as required by the first exception and, therefore, this exception does not apply. Next, defendants argue that the second exception is equally unavailable to plaintiff. In support of this argument, defendants assert that the transaction did not concern "decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." Consequently, plaintiff cannot satisfy the third requirement of the second Delaware carve-out exception. Defendants assert that plaintiff's theory that the phrase "tender or exchange offer" should be construed broadly to cover the transaction at issue, is contrary to the plain language of the statute. Since Congress explicitly carved out only tender offers and exchanges, it would be improper to include transactions "like" them.

In her reply brief, plaintiff disputes that the first Delaware carve-out exception

does not apply. Rather, she argues that at this stage of the proceedings, it is impossible to determine whether or not Georgeson Shareholder Communications was an "affiliate" of defendants or not. Next, plaintiff argues that defendants' reading of the statute is unnecessarily narrow and they fail to cite any authority in support of such a reading.

The court concludes that plaintiff's action is subject to the second Delaware carve-out exception and not preempted by SLUSA. As discussed above, the second exception has three requirements. Defendants' press release constituted a "recommendation, position, or other communication with respect to the sale of any issuer." It was a communication regarding the buyout program offered by Earthgrains to its stockholders owning fewer than 100 shares. (*See* D.I. 4, Ex. A) Therefore, the first requirement is met. Next, the communication was made "by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer." Thus, the second requirement is similarly met. Finally, the court concludes that the communication involved "decisions of such equity holders acting in response to a tender or exchange offer." While defendants argue that their buyout program was not a "tender or exchange offer" under the statute, the court concludes that such a narrow interpretation of the statute is unwarranted.

The parties do not cite, nor has the court found, any statutory or case law defining the phrase "tender or exchange offer" under SLUSA. The legislative history from the Senate Banking Committee discussing the Delaware carve-out exceptions, while brief, is instructive.

> The SEC, as well as other commentators, also noted the need to exempt from the legislation shareholder-initiated litigation based on breach of fiduciary duty of disclosure, in connection with certain corporate action, that is found in the law of some states, most notably Delaware.
>
> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

S. Rep. 105–185, at 6 (May 4, 1998).

In this case, the gravamen of plaintiff's complaint is the breach of defendants' duty of disclosure. As recognized in the Committee report, Delaware has well developed and established laws regarding the fiduciary duty of disclosure of corporate directors with respect to shareholders. Therefore, the court concludes that this is exactly the type of action Congress intended to exempt from the preemption provisions of SLUSA. Furthermore, adopting defendants' narrow interpretation of the statutory language would permit corporations and directors to evade liability by structuring their transactions to fall outside the traditional definition of a tender or exchange offer. Permitting such a manipulation would frustrate the purpose of § 77bb(f)(3)(A)(ii) and render the second Delaware carve-out exception virtually meaningless.

## V. CONCLUSION

For the reasons stated above, the court concludes that SLUSA does not preempt plaintiff's breach of fiduciary duty claims.

**360**

Therefore, plaintiff's motion is granted and this case shall be remanded to the Court of Chancery of the State of Delaware. An appropriate order shall issue.

### ORDER

At Wilmington this 21st day of January, 2003, consistent with the memorandum opinion issued this same day; IT IS ORDERED that plaintiff's motion to remand (D.I.3) is granted.

The Clerk of the Court is directed to return the complete file in the above captioned case to the Court of Chancery of the State of Delaware.