G.F. THOMAS INVESTMENTS, L.P.
On Behalf of Itself and all Others
Similarly Situated

v.

CLECO CORPORATION

No. CIV.A.03–2227–A.

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 9, 2004.

Glenn L. Langley, Herschel E. Richard, Jr., John Tucker Kalmbach, Cook Yancey et al., Shreveport, LA, for Plaintiff.

Richard C. Stanley, Jennifer L. Thornton, William Raley Alford, III, Stanley Flanagan & Reuter, New Orleans, LA, for Defendants.

### *RULING*

DRELL, District Judge.

Before this Court is a motion to remand [Doc. No. 15][1] by Plaintiff and a motion to dismiss [Doc. No. 10] by Defendant pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, the motion to remand is DENIED and the motion to dismiss is GRANTED with prejudice.

### I. PROCEDURAL HISTORY

After Standard & Poor's rating services lowered the credit rating of Cleco and Cleco Power, L.L.C. from "BBB +" to "BBB," and A.G. Edwards downgraded its recommendation of Cleco stock from a "hold" to a "sell," Plaintiff brought suit alleging that Defendant violated Generally Accepted Accounting Principles ("GAAP") and state blue sky laws (La. R.S. §§ 51:712(A) and (D), and 51:714(E)). Plaintiff also wanted to represent a class of

---

1. Document numbers in this Ruling refer to the docket numbers assigned by the clerk of court to each document in this suit.

similarly affected shareholders and claimed that all of the requirements for a class action under state law were satisfied. Finally, Plaintiff contended that Defendant's behavior constituted "fault" under La. Civ.Code art 2315.

This is the second suit brought by Plaintiff against Defendant since November 2002. Both suits are based on the same factual allegations. The plaintiff, G.F. Thomas Investments, L.P., on behalf of itself and all others similarly situated, petitioned for a securities class action on behalf of "certain CLECO shareholders", who were, at the time they purchased securities of CLECO, already shareholders of CLECO, including *but not limited to* participants in the CLECO Dividend Reinvestment Plan ("DRIP") who purchased securities of CLECO, between October 1, 1999 and November 14, 2002 (the "Class Period"). Doc. No. 1, ¶ 2 (emphasis added).

Defendant removed the first suit pursuant to 18 U.S.C. § 1441,and the Securities and Exchange Act of 1934, as amended by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 78bb; the existence of a federal question, 15 U.S.C. § 78aa and 28 U.S.C. § 1331; and principles of supplemental jurisdiction, 15 U.S.C. § 1367. As will be set forth below, SLUSA provides for complete preemption in certain areas of securities law. Therefore, this is a rare occasion in which the Defendant has the authority to remove the case notwithstanding the fact that Plaintiff has been careful to avoid directly implicating any federal laws.

After Defendant removed the case the first time, Plaintiff moved the court to allow it to dismiss voluntarily its claims without prejudice so that it might bring them again outside of the parameters of SLUSA. Defendant objected to the voluntary dismissal without prejudice because, as set forth below, SLUSA mandates that certain suits be removed from state court and dismissed automatically. Defendant argued then, and argues now, that this is such a suit.

After opportunities for the parties to come to an agreement, Judge Robert James approved a stipulated dismissal of the previous action without prejudice, to a point. In exchange for voluntary dismissal without prejudice, Plaintiff entered into binding stipulations which included, *inter alia:* 1) Plaintiff may file a state-court class action against Cleco only under the "Delaware carve-out;" 2) Plaintiff may not attempt to bring any claims in any court against Cleco under federal securities law based on the same factual allegations; 3) Plaintiff may not bring any claims in any "covered class action," as defined in 15 U.S.C. § 78bb(f)(5), in any court against Cleco based on the same factual allegations unless the claims fall within the Delaware carve-out exception; 4) In the event Plaintiff does not adhere to these stipulations Defendant reserved the right to remove the suit again.

Subsequent to the voluntary dismissal without prejudice, Plaintiff filed the second suit in state court. The second suit, again, purported to be based solely on state law. Furthermore, Plaintiff attempted to allege itself within the Delaware carve-out exception.

Again, Defendant removed [Doc. No. 2]pursuant to 18 U.S.C. § 1441,and the Securities and Exchange Act of 1934, as amended by SLUSA; the existence of a federal question, 15 U.S.C. § 78aa and 28 U.S.C. § 1331; and principles of supplemental jurisdiction, 15 U.S.C. § 1367. Now, Defendant moves for dismissal with prejudice [Doc. No. 10] pursuant to FED. R. CIV. P. 12(b)(6) and SLUSA, claiming mandatory dismissal, because Plaintiff failed to fit its cause of action within the Delaware carve-out.

## II. BACKGROUND

The gravamen of Plaintiff's petition is that most of Cleco's official statements and SEC filings during the alleged class period "were materially false and misleading when issued because they failed to disclose the fact that its wholesale energy revenue and income derived from and attributable to the operations of Cleco's trading volumes and revenues had been artificially inflated throughout the Class Period because CLECO had utilized certain Roundtrip transactions in order to create a false and enhanced picture of its financial condition." Petition at par. 10.[2] In layman's terms, Plaintiff says Cleco was under a duty to disclose the roundtrip transactions every time it issued a public statement. The absence of such disclosure caused each public statement to be incomplete. Because of this lack of completeness, investors were unable to paint an educated picture of the organization. Accordingly, each statement was materially false and misleading, resulting in the two alleged state law violations.

## III. ANALYSIS

### A. The Rule 12(b)(6) Motion

A plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The plaintiff must simply allege all the elements of a right to recover against a defendant. *See Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994). When considering a motion to dismiss for failure

to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *See Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) (citing *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985)). Unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief, the complaint should not be dismissed for failure to state a claim. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994); *Fernandez–Montes*, 987 F.2d at 285 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For that reason, a motion to dismiss for failure to state a claim is viewed with disfavor and rarely is granted. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). With this standard in mind, we embark on our analysis of SLUSA and the parties' motions.

### B. SLUSA

#### 1. Legislative History

■ SLUSA was passed by Congress to promote uniformity in the securities markets. It was a follow-up by Congress to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub.L. No. 104–67, 109 Stat. 737 (1995) (codified in part at 15 U.S.C. §§ 77z–1, 78u). The PSLRA was passed to "provide uniform standards for class actions and other suits

---

**2.** According to Plaintiff's petitions, roundtrip transactions are essentially sham transactions that are in violation of state securities laws and regulations established by the Louisiana Public Service Commission. Plaintiff contends that roundtrip transactions are illusionary transactions designed to inflate trading volume and revenues as they are specifically designed to cancel each other out. Allegedly, because the roundtrip transactions cancel

each other out, Defendant did not have to report a gain or loss in net income, but can still benefit from the volume in trading. Trading volume is an indicator used by energy market analysts in their analysis of and relative rankings of energy traders. In addition, Plaintiff alleges that the roundtrip transactions were used to set benchmark contract prices for energy trades. Petition arising out of violations of state securities laws at ¶¶ 4–7.

alleging fraud in the securities market." *Lander v. Hartford Life & Annuity Ins.*, 251 F.3d 101 (2nd Cir.2001). By passing the PSLRA, Congress intended to prevent "strike suits." *See* H.R. CONF. REP. NO. 105–803 (1998). Strike suits are meritless class actions that allege fraud in the purchase or sale of securities. *See Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003) (describing strike suits as frivolous and meritless). "Because of the expense of defending such suits, issuers were often forced to settle, regardless of the merits of the action. *See* H.R. CONF. REP. No. 104–369 (1995). The PSLRA addressed these concerns by instituting, *inter alia*, heightened pleading requirements for class actions alleging fraud in the sale of national securities, *see* 15 U.S.C. § 78u–4." *Lander.*, 251 F.3d at 107.

By the late 1990's Congress realized that the goals of the PSLRA were being circumvented. *Id.* Many class action plaintiffs were bringing suit in state court rather than federal court and avoiding the heightened pleading requirements of the PSLRA. *See* Pub.L. No. 105–353 § 2(2). A House–Senate Committee Report found that the decline in federal securities class action suits that occurred after the enactment of the PSLRA was almost directly proportional to the increase in state court filings. *Id.* Congress passed SLUSA, to close this loophole. When enacting SLUSA, Congress found that:

(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits; (2) since the enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts; (3) this shift has prevented the Act from fully achieving its objectives; (4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and (5) in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

Pub.L. No. 105–353 §§ 2(1)-(5). Thus, SLUSA made "federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." *Lander*, 251 F.3d at 108; *see also* 15 U.S.C. §§ 77p(b)-(c).

## 2. Textual analysis

■ Generally, SLUSA provides that certain securities suits brought in state court are subject to removal to federal court and to immediate dismissal. *See generally* 15 U.S.C. § 78bb. The general provisions of SLUSA are not at issue in this case. The more precise issue is whether an exception to SLUSA applies. Beginning the necessary analysis, however, brings us first to the governing principles of SLUSA. SLUSA provides, in relevant part:

(1) Class action limitations

No covered class action [3] based upon the statutory or common law of any State or

---

**3.** The term "covered class action" means:
(i) any single lawsuit in which -
(I) damages are sought **on behalf of more than 50 persons** or prospective class members, and questions of law or fact

common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, pre-

subdivision thereof may be maintained *in any State or Federal court* by any private party alleging -

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of covered class actions

Any covered class action brought in any State court involving a covered security[4], as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. §§ 78bb(f)(1) and (2) (emphasis added). SLUSA, therefore, requires removal and then dismissal of any (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security.

 The issue in this case is one of apparent first impression in the Fifth Circuit, but there is a measure of persuasive observation from a few other courts. "In enacting SLUSA, Congress evinced a clear intent toward the broad application of the Act." *Zoren v. Genesis Energy, L.P.*, 195 F.Supp.2d 598 (D.Del.2002); *See also Gibson v. PS Group Holdings, Inc.*, 2000 WL 777818 (S.D.Cal. March 8, 2000), *Bertram v. Terayon Commun.*, 2001 WL 514358 (C.D.Cal. March 27, 2001). "Absent application of a savings provision, a federal court loses subject matter jurisdiction and must dismiss the preempted claims." *Zoren*, 195 F.Supp.2d at 603; *See also Prager v. Knight/Trimark Group, Inc.*, 124 F.Supp.2d 229, 231 (D.N.J.2000), *Burns v. Prudential Sec.*, 116 F.Supp.2d 917 (N.D.Ohio 2000). Furthermore, although plaintiffs are the masters of their complaints, the court may not ignore their allegations nor Congressional intent to broadly regulate the securities arena. *See Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Regarding removal, the plain language of SLUSA evinces Congressional intent to preempt entirely a specific category of state-law class actions. *See In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, No. MDL–1446, 2002 WL 32107216, *3–*4 (S.D.Tex.,

---

dominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members; or

(ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which -

(I) damages are sought on behalf of more than 50 persons; and

(II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B) (emphasis added).

4. SLUSA defines "covered security" as:

a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933 [15 U.S.C.A. § 77r(b)], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 [15 U.S.C.A. § 77a et seq.] pursuant to rules issued by the Commission under section 4(2) of that Act [15 U.S.C.A. § 77d(2)].

15 U.S.C. § 78bb(f)(5)(E).

Aug.12, 2002) (citing 15 U.S.C. § 78bb(f)(1)-(2)).

### (a) Covered Class Action.

■ Here, it is clear that the suit involves a covered class action as, *inter alia,* it involves more than 50 shareholders. *See* 15 U.S.C. § 78bb(f)(5)(B). This fact is supported by a sworn affidavit by Kathleen Nolen, the corporate treasurer of Cleco Corporation, stating that the shareholders who were owners during the class period or became owners during the class period exceeded 50 in number. Furthermore, the nature of the allegations make it obvious that there are questions of law or fact common to the members of the prospective class. *Id.* This would clearly be a covered class action.

### (b) Covered Security.

Cleco's stock was listed on the New York Stock exchange during the class period, and, therefore, is a covered security. *See* 15 U.S.C.A. § 77r(b)(1)(a); *see also supra* note 2.

### (c) Misrepresentation or Omission of Material Facts or Use of Manipulative or Deceptive Device or Contrivance.

■ Plaintiff's Petition asserts:

Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made not misleading and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the class members ....

Doc. No. 1, ¶ 29.

As "fraud and deceit" clearly encompass misrepresentation, manipulation and deception, Plaintiff's petition has satisfied this element of SLUSA.

### (d) In Connection with the Purchase or Sale of a Covered Security.

■ Defendant's Memorandum in Support of Motion to Dismiss adequately summarizes how this element is satisfied by Plaintiff's petition:

[T]he phrase "in connection with the purchase or sale of a covered security" is usually defined broadly to ensure that it covers most claims of fraud. *See Affiliated Ute Citizens of Utah,* 406 U.S. at 151–52, 92 S.Ct. at 1471. However, there is no need for any strained interpretation of that phrase in this matter, given the plaintiff's specific allegations. In particular, the plaintiff defines the class as Cleco shareholders who "purchased additional CLECO publicly traded securities" during the Class Period, and who were allegedly damaged thereby. Moreover, Count 1 specifically asserts that Cleco's alleged misconduct "operated as a fraud and deceit upon the CLECO shareholders *who purchased* CLECO's publicly-traded securities during the Class Period." The plaintiff further contends that the class was damaged because it "acquired from CLECO publicly traded securities issued by CLECO during the Class Period at artificially high prices...." Finally, the plaintiff could not be more specific or on point: "As a direct and proximate result of the wrongful conduct of the defendants, plaintiff and the other members of the Class have suffered damages *in connection with their purchase of CLECO's publicly traded securities* during the Class Period."

Doc. No. 10 at 11.

### (e) Based on State Law.

Plaintiff's petition is based exclusively on state law. The two claims are: 1) breach of Louisiana's securities law under La. R.S. §§ 51:712 and 51:714; and 2) tort

liability under La. Civ.Code art. 2315. Accordingly, this case was properly removed.

**(f) The Delaware carve-out.**

█ Herein lies the dispute. Plaintiff argues that its second suit was carefully worded so as to fit within the so-called "Delaware carve-out" exception to SLUSA.[5] Defendant argues that Plaintiff has failed to accomplish that goal.

The Delaware carve-out provisions of SLUSA provide in relevant part:

(i) Actions preserved

Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or common law of the State in which the issuer is incorporated ... may be maintained in State or Federal court by a private party.

(ii) Permissible actions

A covered class action is described in this clause if it involves—

(I) the purchase or sale of securities by the issuer or an affiliate of the issuer *exclusively from or to holders of equity securities of the issuer;*

15 U.S.C. § 78bb (f)(3)(A) (emphasis added with inapplicable portions omitted).

The Delaware carve-out exception has been the subject of recent litigation. While there is no 5th Circuit jurisprudence interpreting this particular section, the 5th Circuit has opined that "[i]t is an elementary rule of statutory construction that the words of a statute will be given their plain meaning absent ambiguity .... Similarly, a statute should be construed such that no word is left without operative effect." *United States v. Vargas–Duran,* 356 F.3d 598 (5th Cir.2004) (internal quotations and citations omitted); *see also Texas Food Indus. Ass'n v. United States Dept. of Agric.,* 81 F.3d 578, 582 (5th Cir.1996), *Texaco Inc. v. Duhe,* 274 F.3d 911, 920 (5th Cir.2001).

As stated in oral argument, the word "exclusively" is key in this dispute. Webster's defines "exclusive" as:

"1 a: excluding or having power to exclude (as by preventing entrance or debarring from possession, participation, or use) .... b: limiting or limited to possession, control, or use (as by a single individual or organization or by a special group or class) .... 2: excluding or inclined to exclude others (as outsiders) from participating (as in an association or privilege) or from cordial relations ...."

Webster's Third New International Dictionary 793 (1981). "Exclusive" is defined by the American Heritage Dictionary as:

1. Excluding or tending to exclude; *exclusive barriers.* 2. Not divided or shared with others: *exclusive publishing rights.* 3. Not accompanied by others; single or sole: *your exclusive function.* 4. Complete; undivided: *gained their exclusive attention.* 5. Excluding some or most, as from membership or participation: *an exclusive club ....*

The American Heritage Dictionary of the English Language 639 (3d ed.1996). Finally, Blacks Law Dictionary defines "exclusive" as: "Appertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vested in one person alone. Apart from all others, without the admission of others to participation." BLACKS'S LAW DICTIONARY 564 (6th ed.1990).

---

5. The "Delaware carve-out" nomenclature comes from *Malone v. Brincat* 722 A.2d 5 (Del.1998), a Delaware case in which the Court described the savings provisions under 15 U.S.C. § 78bb as being particularly applicable to Delaware law, and, therefore, described them as "Delaware carve-outs." *Id.* at 13.

While the definition is helpful in understanding the statute, it is important to note that neither party is actually misinterpreting the term "exclusively." Rather, one party is merely applying it incorrectly. Essentially, the definition of the word "exclusively" is not in dispute. What is in dispute is the question: To what does the term "exclusively" apply, people or transactions?

Plaintiff argues that, because the only plaintiffs included in the putative class action were holders of equity securities of the issuer during the class period, the prospective class action fits within the exception. Said otherwise, Plaintiff would have the Court accept that the term applies to the *parties* involved in the dispute; i.e. if the putative class is limited exclusively to people who were shareholders during the class period, and purchased shares during the class period, then the putative class fits within the Delaware carve-out.

Contradictorily, Defendant would have the Court accept the word "exclusively" as used in a transactional sense. Defendant claims that the words "exclusively ... to" act to preclude any cause of action in which the shares at issue were offered in the open market. Because no shares were offered "exclusively to" the putative class members, Plaintiff does not fit within the Delaware carve-out. In effect, Defendant argues that the offer must be directly to the putative class members, and not in the open market. If the shares are offered or traded in the open market, the Delaware carve-out exception is not met. Defendant contends that Plaintiff would have the Court read the word "exclusively" out of the statute.

Defendant cites two cases in support of this argument. *Zoren v. Genesis Energy, L.P.* dealt with, *inter alia*, whether the Delaware carve-out applied to an Initial Public Offering ("IPO") or Second Public Offering ("SPO") of a limited partnership.

195 F.Supp.2d 598 (D.Del.2002). The court held that it did not:

> Moreover, any effort to fit the public offering claims into a savings provision is likewise unconvincing. By its plain language, the first "carve-out" provision applies only when the purchase or sale is "exclusively from or to" existing holders of securities. Because the IPO and SPO unquestionably involved a purchase or sale to prospective unitholders, not simply those who already owned Genesis units, the exception cannot apply.

*Id.* at 604 (citation omitted).

*Burekovitch v. Hertz*, dealt with allegations of breach of fiduciary duty and fraud by a majority shareholder in connection with his commitment of stock as security for his own personal margin trading. 2001 WL 984942 at *1 (E.D.N.Y. July 24, 2001). The majority shareholder was unable to meet his margin calls and was forced to dump his shares on the open market. *Id.* at *1. Only after a "selling frenzy" took place, did the company make any disclosures. *Id.* at *2. Like here, the plaintiff attempted to bring a class action in state court, under state law. *Id.* at *3. Focusing on the term "exclusively ... to," the court held that the Delaware carve-out exception did not apply because the case was not one in which the corporation purchased or sold "exclusively from or to" its shareholders, but rather a case in which the stock was sold in the open market. *Id.* at *6.

Thus, both *Zoren* and *Burekovitch* stated that the plain language of part I of the Delaware carve-out provisions of SLUSA provides that only when shares of stock are purchased or sold to a limited market (that of the corporation's current shareholders) will the Delaware carve-out provision apply. When the stock is offered to the open market, SLUSA governs the prospective class action. This reasoning, ap-

plied to this case, mandates dismissal with prejudice.

Plaintiff argues that the above interpretation of the Delaware carve-out provision is incorrect. Plaintiff avers that its claim should survive under the Delaware carve-out merely because it invokes the law of the state of incorporation of the defendant/issuer, namely Louisiana. According to Plaintiff, an issuer is allowed to control the law to which it is exposed by choosing its state of incorporation. The Delaware carve-out, as Plaintiff would apply it in this situation, would allow it to bring this suit under Louisiana law merely because Defendant is incorporated under Louisiana law.

In addition, Plaintiff argues that *Zoren* and *Burekovitch* are "overly restrictive" in their interpretations of the Delaware carve-out. Plaintiff states that no court has followed the analysis in *Zoren* and *Burekovitch*, but ignores that no other court appears to have dealt with this precise issue. Finally, Plaintiff argues that the interpretation of these courts is contrary to SLUSA's legislative history.

Plaintiff cites *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* in support of its argument that plaintiffs should be able to control the law to which they are exposed. 292 F.3d 1334, 1345 (11th Cir. 2002). *Riley* is inapposite. The court in *Riley* mainly dealt with whether SLUSA governs situations in which there was no *purchase* or *sale* of securities. *Id.; See also* 15 U.S.C. §§ 78bb(f)(1). The court in *Riley* held that when there is no purchase or sale of securities, if fraud or misrepresentation on the part of organization causes a person to *hold* securities when they otherwise would sell, this type of claim can be brought under state law. *Riley*, 292 F.3d at 1346. Otherwise, when there is a purchase or sale of a security, class actions must be brought under federal securities laws. *Id.* Because *Riley* nev-

er discussed the Delaware carve-out exception, the analysis in *Riley* is not even helpful in this case as persuasion. Furthermore, *Riley* does not support Plaintiff's argument that corporations are able to control the law to which they are exposed merely by filing for incorporation in their state of choice. The principal of preemption through SLUSA is supported by the Supremacy Clause of the United States Constitution. U.S.C. CONST. Art. 6, cl.2. Accordingly, Plaintiff cannot avoid preemption merely by choosing to be governed by state law.

In support of Plaintiff's argument that *Zoren* and *Burekovitch* apply an overly restrictive interpretation, Plaintiff cites two cases, which quote some of SLUSA's legislative history. Plaintiff avers that the interpretation set forth by *Zoren* and *Burekovitch* is contrary to SLUSA's legislative history. Plaintiff otherwise cites no cases that are contrary to *Zoren* and *Burekovitch*. Basically, Plaintiff disagrees with the rulings in *Zoren* and *Burekovitch* because it believes that "[i]f this Court applies *Burekovitch*'s and *Zoren*'s interpretation, the 'Delaware carve-out' could not apply to any security listed (i.e.traded) on a national securities exchange (i.e. publicly traded securities). Such an interpretation would amount to a judicial amendment of the SLUSA by effectively removing the 'Delaware carve-out' from the statute." Doc. No. 16 at 8.

Plaintiff's argument is clearly incorrect. The carve-out would still apply to tender offers, or any other purchase or sale that is not offered to the market, generally, but is offered exclusively to current shareholders. In fact, the opposite is true. If Plaintiff's arguments were taken at face value, the Delaware carve-out becomes unnecessary. Indeed, SLUSA becomes irrelevant as the intended purpose of the statute, to make treatment of certain secu-

rities class action claims uniform, would be frustrated.

In support of its argument that the *Zoren* and *Burekovitch* interpretations of SLUSA are contrary to the legislative history, Plaintiff cites *Alessi v. Beracha* 244 F.Supp.2d 354 (D.Del.2003). In *Alessi*, the court held that the second Delaware carve-out, not at issue here, applied. *Id.* at 359. In doing so, it quoted the legislative history from the Senate Banking Committee, which provides:

> The SEC, as well as other commentators, also noted the need to exempt from the legislation shareholder-initiated litigation **based on breach of fiduciary duty** of disclosure, in connection with the certain corporate action, that is found in the law of some states, most notably Delaware.
>
> The Committee is keenly aware of the importance of state corporate law, specifically those states that have laws that establish a fiduciary duty of disclosure. It is not the intent of the Committee in adopting this legislation to interfere with state law regarding the duties and performance of an issuer's directors or officers in connection with a purchase or sale of securities by the issuer or an affiliate from current shareholders or communicating with existing shareholders with respect to voting their shares, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

S. Rep. 105–185, at 6 (May 4, 1998) *quoted in Alessi*, 244 F.Supp.2d at 359.

This language explains that Congress did not intend SLUSA to cover certain situations, including suits based on directors' fiduciary duties. The rest of the language basically summarizes part II of the Delaware carve-out, which is not at issue in this case. Even here, however, the legislative history limits the stated carve-out to those situations where there is direct contact with the shareholders. Thus, Plaintiff's citation of legislative history is not helpful, nor is its interpretation of it correct.

Plaintiff also cites to *Malone v. Brincat* 722 A.2d 5 (Del.1998), a Delaware case that cites the same legislative history. This case is not helpful either, because it dealt with claims of violation of fiduciary duties of directors and officers and not securities laws. Furthermore, it was decided by the Supreme Court of Delaware, a non-federal forum.

Plaintiff ignores the language in the legislative history that states the purpose of SLUSA was to end the "disturbing trend" of securities class actions shifting from federal to state court and to provide "a uniform national approach and standards of liability for nationally-traded securities." S. Rep. 105–182, *3, 105th Cong., 2nd Sess. (1998). Plaintiff also ignores the Congressional debates in which Congressman Bliley said "[t]his legislation we are considering today will eliminate State court as a venue for meritless securities litigation .... The premise of this legislation is simple: lawsuits alleging violations that involve securities that are offered nationally belong in Federal court." 144 Cong. Rec. H10771–02. Finally, Plaintiff ignores the Congressional findings, which provide in relevant part:

> The Congress finds that -
>
> (1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;
>
> (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;
>
> (3) this shift has prevented that Act from fully achieving its objectives;
>
> \* \* \* \* \* \*

(5) in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, *it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities* ....

H.R. Rep. Conf. No. 105–803, at 3 (1998) (emphasis added).

This Court cannot ignore the plain language of SLUSA. The Supreme Court has stated often that:

> [i]t is "a cardinal principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void or insignificant.'" *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted); see *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *Inhabitants of Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)).

*TRW Inc. v. Andrews,* 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001).

It is this Court's duty to ensure the word "exclusively" is not effectively read out of the statute. In applying this charge, we conclude that Defendant's interpretation is the only reasonable one. Application of the plain meaning of every word of 15 U.S.C. § 78bb (f)(3)(A)(I) requires this Court to hold that the Delaware carve-out does not apply to Plaintiff's suit.

### (g) Automatic Dismissal.

 Once it is established that SLUSA governs the suit, and that the suit does not come within the parameters of the Delaware carve-out, the suit must be dismissed. *See Lander,* 251 F.3d at 110 *supra* ("the test of SLUSA calls for dismissal of the action"); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 189 F.Supp.2d 14, 16 ("SLUSA makes classic securities suits brought in state court subject to removal to federal court and dismissal"). SLUSA mandates dismissal of this suit. There is some question of the propriety of allowing amendment of this suit in federal court and then remanding to state court,[6] or allowing the matter to remain in federal court subject to the heightened pleading requirements of the PSLRA. As this was Plaintiff's stipulated opportunity to conform its allegations to fit within the Delaware carve-out, to stay in state court, allowing it to amend, yet again, is not in the interests of justice, nor fair to the parties.

In order to compromise Defendant's motion to dismiss in the earlier suit, Plaintiff entered into a binding stipulation. Part of that stipulation was that Plaintiff would be given a single opportunity to re-file its claims in state court under the umbrella of the Delaware carve-out. As we see from what occurred when Plaintiff re-filed, Plaintiff did not properly limit its claims, necessitating removal and the present action. In the stipulation, Plaintiff agreed it would be barred from:

---

**6.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ....

FED. R. CIV. P. 15(a).

[S]ubsequently bring[ing] or attempt[ing] to bring any claims in any court against Cleco or Eppler under federal securities law based on the same factual allegations as made in this suit and which could have been brought in this action.

Exhibit "A" at 3. There was valid consideration for Plaintiff's stipulation, in the nature of "transaction and compromise" as defined under Louisiana law.[7]

## IV. CONCLUSION

Plaintiff has failed to effect an action within the Delaware carve-out exception to SLUSA. Plaintiff can prove no set of facts in support of its claim that the Delaware carve-out applies to its suit. Therefore, the motion to remand is hereby DENIED, and this suit is hereby DISMISSED WITH PREJUDICE.

7. A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form. La. Civ.Code art. 3071.