Margaret ALESSI, Individually and on behalf of all others Similarly Situated, Plaintiff,

v.

Barry H. BERACHA, Jerry E. Ritter, James Iglesias, J. Joe Adorjan, Timothy P. Smucker, Peter F. Benoist, Maxine K. Clark, E. Byron Glore, Jr., William E. Stevens, and The Earthgrains Company, Defendants.

C.A. No. 18993–NC.

Court of Chancery of Delaware, New Castle County.

Submitted: March 17, 2004.
Decided: May 11, 2004.

Carmella P. Keener, of Rosenthal Monhait Gross & Goddess, P.A., Wilmington, DE; Robert I. Harwood and Daniella Quitt, of Wechsler Harwood, L.L.P., New York City, of counsel, for Plaintiff.

Jesse A. Finkelstein and Thad J. Bracegirdle, of Richards, Layton & Finger, Wilmington, DE; Christopher King and Wendy N. Enerson, of Sonnenschein Nath & Rosenthal, L.L.P., Chicago, IL, of counsel, for Defendants.

## OPINION

CHANDLER, Chancellor.

Plaintiff, Margaret Alessi, was a small investor in The Earthgrains Company.

She owned less than 100 shares. On May 18, 2001, Earthgrains issued a press release announcing a program that would allow its shareholders holding less than 100 shares to sell or buy shares at the current market value (around $25) for a below normal brokerage fee. Seizing the opportunity, Alessi sold her shares. Shortly thereafter, Earthgrains announced that Sara Lee Corporation had agreed to purchase the Company for almost double the price that Alessi received for her shares. As it turns out, Earthgrains had been negotiating intensely with Sara Lee before Alessi sold her shares. Alessi believes Earthgrains' board of directors should have informed Earthgrains' stockholders about those negotiations. Defendants have moved to dismiss Alessi's complaint. Because I believe that Alessi has stated a viable claim for disclosure violations, I deny defendants' motion to dismiss her complaint.

## I. PROCEDURAL BACKGROUND

Alessi filed the complaint in this action over two years ago. Shortly after the complaint was filed, the parties fully briefed a motion to dismiss. After considering the parties' submissions, I instructed defendants to remove the case to the Federal District Court for the District of Delaware to determine whether the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")[1] preempted Alessi's claim. After due consideration, Chief Judge Robinson determined that "SLUSA does not preempt plaintiff's breach of fiduciary duty claims."[2] Judge Robinson found that SLUSA's legislative history revealed that Congress was "'keenly aware of the importance of state law'" and that federal law should not "'interfere with state law regarding the duties and performance of an issuer's directors or officers.'"[3] After further briefing in this Court, defendants' motion to dismiss is pending once more.

## II. FACTUAL ALLEGATIONS

Earthgrains, a Delaware corporation, was spun-off from Anheuser–Busch Companies, Inc. in March 1996.[4] As a result of the spin-off, many Earthgrains shareholders owned less than 100 shares and continued to hold their shares because of the high cost of brokerage commissions or the inconvenience of buying or selling in small amounts. Earthgrains, seeking to minimize these "odd lots" of shares, announced via a press release on May 18, 2001, a voluntary buy-sell program for shareholders holding fewer than 100 shares of common stock. The program, administered by Georgeson Shareholder Communications, Inc., allowed shareholders such as Alessi to buy or sell shares at the market-based price for a small processing fee. The shares were bought and sold on the open market through a broker. The buy-sell program, according to the May 18 press release, ended on June 20, 2001. Plaintiff Alessi sold her shares in the program.

Before, during, and after the commencement of the buy-sell program, Earthgrains

1. Pub.L. No. 105–353, 112 Stat. 3227 (codified as amended in scattered sections of 15 U.S.C.).

2. *Alessi v. Beracha,* 244 F.Supp.2d 354, 359 (D.Del.2003).

3. *Id.* (quoting S.Rep. No. 105–182, at 11–12 (1998), 105TH Cong., 2nd Sess. 1998). *See generally* William B. Chandler III & Leo E. Strine, Jr., *The New Federalism of the American Corporate Governance System: Preliminary Reflections of Two Residents of One Small State,* 152 PENN. L. REV. 953, 1005 (2003) (states are "full partners in the creative process of reform").

4. The facts referenced in the Opinion are drawn solely from the complaint and those portions of documents quoted therein.

was negotiating a sale of the Company to Sara Lee. According to a Schedule 14d–9 Initial Solicitation Statement filed by Earthgrains with the Securities & Exchange Commission on July 3, 2001, Sara Lee approached Earthgrains' Chairman and CEO, Barry Beracha, about a possible deal in early April 2001. By May 22, 2001, shortly after the initiation of the buy-sell program, Sara Lee's President and CEO, Steve McMillan, met with Beracha to discuss the significant terms of the transaction, including valuation. On May 29, 2001, Earthgrains and Sara Lee executed a confidentiality agreement relating to discussions among the respective companies' management and advisors. A week later, on June 6, 2001, Earthgrains made a presentation to Sara Lee's management. On June 19, 2001, one day before the buy-sell program expired, Sara Lee's counsel provided a draft merger agreement to Earthgrains' counsel. The negotiations culminated with the announcement on July 2, 2001, shortly after the cessation of the buy-sell program, that Sara Lee would purchase Earthgrains for approximately $1.7 billion, or over $40 per share.

Alessi sold her shares in the Company through the buy-sell program. During the operation of the program (May 18, 2001 to June 20, 2001), Earthgrains' stock traded between $25 and $27 per share, significantly less than the amount Sara Lee offered. Alessi has brought a claim for breach of fiduciary duty against the Company and its nine directors during the relevant period.[5] Alessi alleges that defendants' sponsorship of the buy-sell program, "without disclosing that material non-public information was in their possession as to the planned Sara Lee" transaction, was a breach of defendants' fiduciary duty of disclosure.[6] Alessi alleges that, as a result of the non-disclosure, she sold her shares through the buy-sell program for a substantially lower amount than she would have received pursuant to the Sara Lee tender offer.

## III. ANALYSIS

Defendants have moved to dismiss on the following grounds: (a) the complaint does not allege any involvement by Earthgrains' directors in the buy-sell program; (b) the complaint only states a cause of action for "fraud on the market," which is not recognized under Delaware law; (c) the information allegedly withheld, merger negotiations, is immaterial as a matter of law; and (d) Earthgrains, as opposed to the director defendants, does not owe a fiduciary duty of disclosure to Alessi. I will address each ground for dismissal in turn.

### A. Involvement of Earthgrains' Board

Defendants argue that the complaint does not allege any involvement by Earthgrains' directors in the buy-sell program and that, absent an allegation regarding the board's involvement, the director defendants' duty of disclosure was never triggered. As such, according to defendants, the complaint should be dismissed as a matter of law.

In support of their argument, defendants cite to *Malpiede v. Townson.*[7] In *Malpiede*, one of the issues was whether the reasons for the resignations of two directors of Frederick's of Hollywood, shortly before a ·merger into Knights-

---

5. The defendant directors are Barry H. Beracha, Jerry E. Ritter, James Iglesias, J. Joe Adorjan, Timothy P. Smucker, Peter F. Benoist, Maxine K. Clarke, E. Byron Glore, Jr., and William E. Stevens.

6. Compl. ¶ 23.

7. 780 A.2d 1075 (Del.2001).

bridge Capital Corporation, should have been disclosed to shareholders.[8] The Delaware Supreme Court found that the complaint did "not allege–or present facts supporting an inference–that the board was aware of the reasons for the directors' resignations."[9] Therefore, according to the Court, "the board did not have a duty to disclose its assumptions about why the directors resigned."[10] By analogy, defendants argue that since the complaint makes no allegation regarding the involvement of Earthgrains' board in the buy-sell program (or the press release related thereto), the director defendants had no duty to disclose the merger negotiations with Sara Lee.

■ Defendants' argument fails, however, because the complaint does allege that the director defendants were aware of the buy-sell program. The first paragraph of the complaint states that the director defendants "caus[ed] the Company to sponsor" the buy-sell program.[11] The complaint later alleges that "[d]efendants caus[ed] Earthgrains to sponsor" the buy-sell program.[12] The plain meaning of the quoted passages is that Earthgrains' directors took action resulting in the Company's assumption of responsibility for the buy-sell program. I must accept these allegations as true.[13] Even if for some reason these allegations are insufficient on their face, they certainly create an inference that the director defendants were

involved, knowledgeable, or at least aware of the program and the accompanying press release. As a matter of law, plaintiff is entitled to the benefit of such an inference.[14] Further, such an inference comports with the principle that "[t]he business and affairs" of Earthgrains was to "be managed by or under the direction" of the director defendants.[15] Assuming that the director defendants were not sensibly informed of Earthgrains' affairs is an unreasonable inference to draw from the allegations in the complaint.[16]

### B. "Fraud on the Market"

■ Defendants' contention is that Alessi's claim is based upon "fraud on the market," a theory which Delaware law does not recognize under *Malone v. Brincat*.[17] In *Malone*, the Delaware Supreme Court stated:

In deference to the panoply of federal protections that are available to investors in connection with the purchase or sale of securities of Delaware corporations, this Court has decided not to recognize a state common law cause of action against the directors of Delaware corporations for "fraud on the market."[18]

Under *Malone*, defendants argue that the complaint should be dismissed. Defendants' argument, however, is based on a misunderstanding of the fraud on the market theory and *Malone*.

8. *Id.* at 1088.

9. *Id.*

10. *Id.*

11. Compl. ¶ 1.

12. Compl. ¶ 23.

13. *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 285 (Del.Ch.2003).

14. *Id.*

15. 8 *Del. C.* § 141(a).

16. Of course, after discovery is taken, the allegation that the director defendants sponsored the buy-sell program may prove inaccurate.

17. 722 A.2d 5 (Del.1998).

18. *Id.* at 13 (footnote omitted).

As explained by the United States Supreme Court in *Basic, Inc. v. Levinson:* [19]

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.[20]

The fraud on the market theory is simply a "rebuttable presumption of reliance." [21] Alessi does not need to rely on this rebuttable presumption, however, because *Malone* teaches that "[a]n action for breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the element[ ] of reliance." [22]

In *Malone*, the complaint alleged that the director defendants caused Mercury Finance Company to disseminate overstatements of Mercury's financial health and that the corporation lost substantial value as a result.[23] The Court found that there was no request for shareholder action.[24] It is in this context that the Court disavowed the existence of the fraud on the market theory under Delaware law.

In other words, if a complaint does not allege statements made to shareholders in conjunction with a request for shareholder action, a plaintiff cannot rely on a "rebuttable presumption of reliance." [25]

In this case, however, there was a request for shareholder action and Alessi does not need to resort to "fraud on the market" to establish reliance. The May 18 press release announced a program that was targeted specifically to shareholders holding fewer than 100 shares of Earthgrains' common stock. As detailed in the press release, " '[m]any of these shareholders continue[d] to hold their shares because of the cost of brokerage commissions or the inconveniences of buying or selling in small amounts.' " [26] The buy-sell program provided an opportunity for this defined group of shareholders to dispose of their Earthgrains' holdings (or bring their holdings up to 100 shares) for a below-market processing fee. Based on the allegations in the complaint, it is reasonable to conclude (1) that the program was a "request" for this group of shareholders to take action, *i.e.*, sell or increase their current holdings in Earthgrains, and (2) that the May 18 press release was issued in connection with the Company's pursuit of shareholder action.[27] Alessi, falling within the group of shareholders from whom ac-

---

19. 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

20. *Id.* at 242, 108 S.Ct. 978 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir. 1986)). *Malone,* 722 A.2d at 13 n. 37, cites to *Basic* for its discussion of the fraud on the market theory.

21. *Id.*

22. 722 A.2d at 12.

23. *Id.* at 14.

24. *Id.*

25. *Basic,* 485 U.S. at 242, 108 S.Ct. 978.

26. Compl. ¶ 16 (quoting the May 18 press release).

27. This conclusion is buttressed by the findings of Chief Judge Robinson: "Defendants' press release constituted a 'recommendation, position, or other communication with respect to the sale of any issuer.' It was a communication regarding the buyout program offered by Earthgrains to its stockholders owning fewer than 100 shares." *Alessi,* 244 F.Supp.2d at 359 (quoting 15 U.S.C. § 78bb(f)(3)(A)(ii), "Delaware carve-out" exception to SLUSA).

tion was sought, does not need to establish reliance.

■ Finally, defendants' contentions are a failed attempt to re-litigate the position they advocated unsuccessfully in the United States District Court. Chief Judge Robinson ruled against defendants, finding that the "Delaware carve-out" exception applied because "the gravamen of plaintiff's complaint is the breach of defendants' duty of disclosure."[28] In this Court, defendants are arguing that the gravamen of plaintiff's complaint is a violation of federal securities law. If, after the United States District Court found that the "Delaware carve-out" exception applied, I ruled that the complaint stated claims only cognizable under federal law, the shareholders of Earthgrains would have no court in which to seek redress. Such a result cannot be countenanced. State and federal law regarding corporate disclosure should be "not only compatible but complementary [and] symbiotic."[29]

### C. Materiality of Merger Negotiations

Defendants assert that, accepting all the allegations in the complaint as true, the information allegedly withheld from shareholders was immaterial as a matter of law under the Delaware Supreme Court's decision in *Bershad v. Curtiss–Wright Corporation*.[30] In *Bershad*, Curtiss–Wright Corporation effectuated a cash-out merger of one its subsidiaries, Dorr–Oliver Incorporated.[31] One of the issues in the case was whether defendant directors breached

their fiduciary duties of disclosure by failing to disclose "certain casual inquiries" for Dorr–Oliver in the proxy statement seeking shareholder approval of the merger.[32] In *Bershad*, the evidence indicated that the defendants informed inquiring parties that "Dorr–Oliver was not for sale."[33] In addition, the one inquiring party that the plaintiff specifically identified "did not have detailed, non-public financial data on Dorr–Oliver and never seriously considered making an offer."[34] The Court held that "[s]ince it is undisputed that: (1) Dorr–Oliver was not for sale, and (2) no offer was ever made for Dorr–Oliver, the defendants were not obligated to disclose preliminary discussions regarding an unlikely sale."[35]

■ In my opinion, the *Bershad* holding does not require dismissal of the complaint in this case. The allegations here establish that Earthgrains was for sale, the discussions were substantive and advanced, an offer was made, and the sale was actually consummated. According to the allegations in the complaint, the following events occurred *before the expiration of the buy-sell program:*

- Sara Lee's president and CEO (Steve McMillan) contacted Earthgrains' Chairman and CEO (Barry Beracha) to discuss business opportunities;

- McMillan and Beracha met to discuss Sara Lee acquiring Earthgrains;

- Beracha met with Earthgrains' board to discuss Sara Lee's overture;

---

**28.** *Id.*

**29.** *Malone,* 722 A.2d at 13 (commenting on "Delaware carve-out"). *See also* Chandler & Strine, *supra* note 3, at 1005.

**30.** 535 A.2d 840 (Del.1987)

**31.** *Id.* at 841.

**32.** *Id.* at 847.

**33.** *Id.* I say "evidence" because the *Bershad* decision was rendered after discovery. *See Bershad v. Curtiss–Wright, Corp.,* 1983 WL 10916, at *1 (Del.Ch. Mar.21, 1983).

**34.** *Bershad,* 535 A.2d at 847.

**35.** *Id.*

- McMillan and Beracha met again to discuss "significant terms" and "valuation;"
- Sara Lee and Earthgrains entered into a confidentiality agreement for due diligence purposes;
- Earthgrains' management made a formal presentation regarding the acquisition to Sara Lee's management; and
- Sara Lee's lawyers provided Earthgrains' lawyers a draft merger agreement.[36]

The complaint also alleges that seven business days after the expiration of the buy-sell program, Sara Lee announced it was purchasing Earthgrains for a significant premium over Earthgrains' trading price during the buy-sell program.[37] There is an enormous distance between the facts in *Bershad* (a casual inquiry flatly rejected) and the intense, progressed negotiations present here that ultimately resulted in a merger entailing a substantial premium to Earthgrains' market value.

Other Delaware cases that have found omitted facts regarding merger discussions immaterial are similarly distinguishable. In *Shamrock Holdings, Inc. v. Polaroid Corporation,*[38] there was only an expression of interest in a friendly meeting between firms and the facts did not suggest actual "merger discussions" or "negotiations."[39] In *Krim v. ProNet, Inc.,*[40] the plaintiff only offered conclusory allegations about "discussions or negotiations" and did not allege specific facts regarding potential suitors.[41] And in *In re the MONY Group, Inc. Shareholder Litigation,*[42] the plaintiff could only point to a letter from a third-party that "simply expressed an interest in discussing the *possibility* of a combination *if* the [primary] deal fell through."[43] In all three cases, the Court of Chancery held that the omitted information was immaterial. I of course agree with the results of the preceding decisions, as well as *Bershad,* because the facts as alleged by the plaintiffs in those cases did not give rise to an inference that the omitted information "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[44]

The conundrum presented by *Bershad* is not its facts, but the broad and inflexible rule that defendants seek to extract from it. The Court there stated: "Efforts by public corporations to arrange mergers are immaterial under the *Rosenblatt v. Getty* standard, as a matter of law, until the firms have agreed on the price and structure of the transaction."[45] Read literally

---

36. *See* Compl. ¶¶ 20(a)–(g).

37. Compl. ¶ 18.

38. 559 A.2d 257 (Del.Ch.1989).

39. *Id.* at 274–75.

40. 744 A.2d 523 (Del.Ch.1999).

41. *Id.* at 528–29.

42. 2004 WL 303894 (Del.Ch. Feb.18, 2004).

43. *Id.* at *13 (emphasis in original). The potential suitor also expressed its expectation that the primary deal would go through (and it ultimately did). *Id.*

44. *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

45. *Bershad,* 535 A.2d at 847. The *Rosenblatt v. Getty Oil Co.,* 493 A.2d 929 (Del.1985) "standard" is the materiality standard enunciated by the United States Supreme Court in *TSC Industries,* 426 U.S. at 449, 96 S.Ct. 2126, and adopted by the Delaware Supreme Court in *Rosenblatt,* 493 A.2d at 944. *TSC Industries* states:

An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important ... Put another way, there must be a substantial likelihood that the disclosure of the

this ruling was broader than necessary to resolve the materiality of the "casual inquiry" at issue in *Bershad*.

The rationale for the *Bershad* rule, according to the Delaware Supreme Court, is three-fold. First, "[t]he probability of completing a merger benefiting all shareholders may well hinge on secrecy during the negotiation process."[46] Second, "[i]t would be very difficult for those responsible to determine when disclosure should be made."[47] And finally, "Delaware law does not require disclosure of inherently unreliable or speculative information which would tend to confuse stockholders or inundate them with an overload of information."[48] In the unusual circumstances of this case, and at this stage of the proceedings, I am not convinced that these rationales dictate dismissal of this action.

■ The first rationale, that secrecy increases shareholder wealth in some cases, is not a justification for maintaining secrecy in all cases–the effect of reading the *Bershad* rule literally and broadly, as defendants urge me to do. The rule allows fiduciaries to withhold information from shareholders, even though the information may be material *and* even though withholding the information is not necessary to maximize shareholder wealth. In other words, the literal reading of *Bershad's* holding (and the secrecy rationale) is overbroad. Importantly, defendants have not argued here that the discussions with Sara Lee would have faltered if there was some type of disclosure before the date the transaction was formally consummated, even though the disclosure would have (based on the allegations in the complaint) significantly altered the total mix of information.[49] Moreover, in this case, defendants' decision to sponsor the buy-sell program arguably may have circumscribed their ability to conduct secret negotiations (at least once those negotiations reached a certain point).[50] Confidential negotiations are clearly necessary to preserve the benefit of business transactions, and nothing I say here is meant to denigrate their importance or appropriateness. But the secrecy rationale cannot be used in *every* circumstance as a "free pass" to allow fiduciaries to withhold clearly material information from stockholders.

The second rationale, that fiduciaries find non-disclosure of merger negotiations easier than tough decisions about when to disclose, is insufficient to justify the omission of material information in a communi-

---

omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.
426 U.S. at 449, 96 S.Ct. 2126.

**46.** *Bershad,* 535 A.2d at 847 n. 5.

**47.** *Id.*

**48.** *Arnold v. Soc'y for Sav. Bancorp.,* 650 A.2d 1270, 1280 (Del.1994). Although not found in *Bershad,* the Delaware Supreme Court stated in *Arnold* that this "principle is consistent with *Bershad." Id.*

**49.** Certainly, after discovery is taken, defendants may choose to make such an argument, which, if supported by evidence, may demonstrate that defendants did not breach their fiduciary duty of disclosure.

**50.** Even assuming that secrecy was essential in the circumstances here, it is not clear that the Earthgrains board had only two alternatives–disclosing the negotiations and thereby jeopardizing consummation of the Sara Lee merger *or* maintaining secrecy of the negotiations and thereby ensuring consummation of the merger. A third alternative existed: defendants could have suspended the buy-sell program once the merger discussions became material. "Materiality is determined with respect to the shareholder action being sought," *Malone,* 722 A.2d at 12, *i.e.,* there probably would not be an issue if defendants had ceased sponsoring the buy-sell program.

cation requesting shareholder action. I agree that "[a] bright-line rule is easier to follow than a standard that requires the exercise of judgment in the light of all the circumstances,"[51] but the fact that a literal reading of the *Bershad* rule is "easier" highlights its weakness. "Any approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality must necessarily be over- or underinclusive."[52] Such imprecision, in my opinion, does not comport with a modern understanding of shareholders' rights and the common law of fiduciary duties.

■ The third rationale, shareholder confusion, is the least persuasive reason for a literal application of the *Bershad* rule. The Delaware Supreme Court's shareholder confusion concern seems to be two-fold. First, that the merger discussions may collapse (even if not disclosed), which means any disclosure would consist of "inherently unreliable or speculative information that would tend to confuse stockholders."[53] Second, that disclosure of all merger talks would "inundate [shareholders] with an overload of information."[54] In the context of this case, these

concerns are overbroad, as they assume that all merger discussions—regardless of the probability that the transaction will occur or the anticipated magnitude of the transaction in the light of the totality of the company activity—must be disclosed.[55] Casual inquiries or mere expressions of interest need not be disclosed.[56] In addition, finding that merger discussions may be material does not imply that shareholders are entitled to a "play-by-play" of the negotiations. Finally, these shareholder confusion concerns have a deeper problem: "[They] assume[ ] that investors are nitwits, unable to appreciate—even when told—that mergers are risky propositions up until the closing."[57]

After *Bershad* was decided, the United States Supreme Court grappled with whether it would adopt a bright-line rule that all merger discussions before agreement on "price and structure" are immaterial.[58] The United States Supreme Court rejected the bright-line rule, concluding:

> We ... find no valid justification for artificially excluding from the definition of materiality information concerning merger discussions, which would otherwise be considered significant to the

---

**51.** *Basic,* 485 U.S. at 236, 108 S.Ct. 978.

**52.** *Id.* The "bright line rule" is set for the lowest common denominator, against disclosure and shareholders' interests, which results in the exclusion of otherwise valid claims for director misconduct. Adjudication through flexible standards commits courts to resolve disputes through open and candid reasoning, rather than a self-justifying *ipse dixit.* Former Chancellor Allen, commenting on the benefits of a contextualized approach to decision-making, has stated: "A judicial system that exposes its grounds - its real grounds, which may extend beyond a set of doctrinal expressions - is in the end, the better system of government." William T. Allen, *Ambiguity in Corporation Law,* 22 DEL. J. CORP. L. 894, 902 (1997).

**53.** *Arnold,* 650 A.2d at 1280.

**54.** *Id.*

**55.** *See SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 862 (2d Cir.1968) (*en banc*) (detailing probability/magnitude balancing approach). *Texas Gulf Sulphur* was cited with approval in *Arnold,* 650 A.2d at 1281 n. 18.

**56.** *See, e.g., Shamrock Holdings,* 559 A.2d at 274–75 (applying *Basic,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194, and finding expression of interest immaterial).

**57.** *Flamm v. Eberstadt,* 814 F.2d 1169, 1175 (7th Cir.1987).

**58.** *See Basic,* 485 U.S. at 232–41, 108 S.Ct. 978.

trading decision of a reasonable investor; merely because agreement-in-principle as to price and structure has not yet been reached by the parties or their representatives.[59]

The Supreme Court stated that "[w]hether merger discussions in any particular case are material ... depends on the facts."[60]

The United States Supreme Court provided meaningful standards to assess whether merger discussions should be disclosed. The Court noted that whether a contingent event, such as a merger, is material " 'will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.' "[61] The probability/magnitude approach is a familiar one. In the context of merger discussions, the Court further noted "in order to assess the probability that the event will occur, a fact finder will need to look to indicia of interest in the transaction at the highest levels."[62] And to assess the magnitude of the transaction, "a fact finder will need to consider such facts as the size of the two corporate entities and the potential premiums over market value."[63] Lastly, the materiality standard

is applied "with respect to the shareholder action being sought."[64]

Application of these standards leads to only one conclusion: Alessi's complaint should not be dismissed. The complaint alleges "indicia of interest in the transaction at the highest corporate levels."[65] The pending Sara Lee transaction was arguably the most important event in Earthgrains' short life: "to wit, its death."[66] Further, the complaint alleges that the Sara Lee acquisition was at a significant premium over market value. Importantly, the information regarding Earthgrains' merger discussions with Sara Lee was allegedly withheld from those shareholders who sold their Earthgrains' stock under the buy-sell program sponsored by defendants. As such, I cannot find "that the plaintiff would not be entitled to relief under any set of facts that could be proven to support the claim."[67]

I am convinced that the Delaware Supreme Court, if presented with these facts, would agree with me for two reasons. First, as I have already mentioned, the facts as alleged are categorically different than the facts presented in *Bershad*. In *Bershad*, the conclusion that never-pursued casual inquiries were immaterial was a comfortable one.[68] Here, it takes a cer-

---

**59.** *Id.* at 236, 108 S.Ct. 978.

**60.** *Id.* at 239, 108 S.Ct. 978.

**61.** *Id.* at 238, 108 S.Ct. 978 (quoting *Texas Gulf Sulphur*, 401 F.2d at 849).

**62.** *Id.* at 239, 108 S.Ct. 978.

**63.** *Id.*

**64.** *Malone*, 722 A.2d at 12. Whether shareholder action is sought–and the type of action sought–has independent significance. If Earthgrains had not issued a press release to its shareholders encouraging them to dispose of their shares (while secret discussions with Sara Lee were ongoing), it may have altered the decision on the pending motion.

**65.** *Basic*, 485 U.S. at 239, 108 S.Ct. 978.

**66.** *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 47 (2d Cir.1976) (Friendly, J.).

**67.** *In re Walt Disney*, 825 A.2d at 285 (citing *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1104 (Del.1985)).

**68.** The decision in *Bershad* was also reached *after the benefit of discovery. See Bershad v. Curtiss–Wright, Corp.*, 1983 WL 10916, at *1 (Del.Ch. Mar.21, 1983). In such a fact-sensitive inquiry as materiality, dismissing a complaint outright before any discovery is uncommon. Moreover, even assuming that the parties must agree to "price and structure" before merger discussions are material, it is

tain blind arrogance to suggest that, as a categorical matter, Earthgrains' discussions with Sara Lee were immaterial to a reasonable shareholder asked to sell his or her shares in Earthgrains. Second, federal law on the subject has matured since the *Bershad* decision. At the time *Bershad* was decided, the United States Supreme Court had yet to express its opinion that the reasoning supporting a bright-line rule to address the inherently fact-sensitive inquiry into materiality is infirm.[69]

### D. *Earthgrains' Duty?*

■ Alessi argues that this Court should exercise jurisdiction over Earthgrains because, if she is awarded rescissory relief, Earthgrains is the appropriate party from which to seek such relief. Defendants' argue that Earthgrains, as opposed to the director defendants, does not owe a fiduciary duty of disclosure to Alessi. Alessi's argument must fail for two reasons. First, the complaint does not plead rescission as a remedy. Second, the only cognizable claim pled in the complaint is for breach of fiduciary duty, but Alessi concedes, as she must, that "[f]iduciary

duties are owed by the directors and officers to the corporation and its stockholders."[70] In other words, Earthgrains owes no fiduciary duty to Alessi. I will not require Earthgrains to remedy Alessi's injury without a valid legal theory for holding Earthgrains liable.

## IV. CONCLUSION

Based on the allegations in the complaint, Alessi's claim should go forward. The complaint alleges facts that, if true, may entitle her to relief against the director defendants for a breach of the fiduciary duty of disclosure. The complaint, however, does not state a claim against Earthgrains and that purported claim is dismissed without prejudice.

IT IS SO ORDERED.

---

not an unreasonable inference to conclude that Earthgrains and Sara Lee had agreed to price and structure "in principle" before expiration of the buy-sell program. As I read *Bershad*, it does not require a signed, definitive agreement before merger discussions are material. As such, an agreement-in-principle is a dimly lit area surrounding the supposedly bright-line of *Bershad*. *See American Fin. Servs. Group v. Treasure Bay Gaming & Resorts, Inc.*, 2000 WL 815894, at *9 (S.D.N.Y. June 23, 2000) (describing agreement-in-principle as only basic understanding of prospective agreement).

**69.** *See Basic*, 485 U.S. at 232–39, 108 S.Ct. 978. Furthermore, even if the Supreme Court was wrong (which I do not believe it was), any harm from rejecting *Bershad* is non-unique because all corporations subject to regulation by the federal securities laws have been adhering to *Basic* for over a decade.

**70.** *Arnold v. Soc'y for Sav. Bancorp*, 678 A.2d 533, 539 (Del.1996).