IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BERT DOHMEN, | § | |
| | § | |
| Defendant Below, | § | No. 403, 2019 |
| Appellant, | § | |
| | § | |
| v. | § | Certification of Question of Law |
| | § | from the United States Court |
| ALBERT GOODMAN, | § | of Appeals for the Ninth Circuit |
| | § | |
| Plaintiff Below, | § | Docket No. 2:15-cv-00020 |
| Appellee. | § | |

Submitted: April 15, 2020
Decided: June 23, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Ninth Circuit. **CERTIFIED QUESTION ANSWERED**.

Sarah M. Ennis, Esquire, MORRIS JAMES LLP, Wilmington, Delaware; Andrew B. Holmes, Esquire, Matthew D. Taylor, Esquire, HOLMES, TAYLOR, COWAN & JONES LLP, Los Angeles, California; *Attorneys for Defendant-Appellant Bert Dohmen.*

Rodney Smolla, Esquire, Wilmington, Delaware; Jeffrey C. Engerman, Esquire, LAW OFFICES OF JEFFREY C. ENGERMAN, P.C., Los Alamitos, California; *Attorneys for Plaintiff-Appellee Albert Goodman.*

**SEITZ**, Chief Justice:

The United States Court of Appeals for the Ninth Circuit has certified a question of law to our Court arising out of an appeal from the United States District Court for the Central District of California:

> In a Delaware limited partnership, does a general partner's request to a limited partner for a one-time capital contribution constitute a request for "limited-partner action" such that the general partner has a duty of disclosure, and, if the general partner fails to disclose material information in connection with the request, may the limited partner prevail on a breach-of-fiduciary-duty claim without proving reliance and causation?

As invited by the Ninth Circuit,[1] we have reframed the certified question in a way we believe will be most helpful in resolving the remaining issue in the Ninth Circuit appeal:

> Under the stipulated facts of this dispute, does the general partner's request to the limited partner for a one-time capital contribution constitute a request for limited partner action such that the general partner has a duty of disclosure, and if the general partner fails to disclose material information in connection with the request, may the limited partner prevail on a breach of fiduciary duty claim and recover compensatory damages without proving reliance and causation?

For the reasons explained below, we answer the certified question, as reframed, in the negative.

---

[1] *Goodman v. Dohmen*, No. 17-56330 (9th Cir. Sept. 20, 2019); Opening Br. Ex. ("Certification Request") at 12 ("[The] phrasing of the question should not be construed to restrict the Supreme Court of Delaware's consideration of the issues involved in this case.").

## I.

The facts relevant to our decision are taken from the stipulated facts in the certification request. Bert Dohmen is well known in the financial-services industry for his newsletters, which analyze financial markets and world economies. Dohmen had never created or managed a hedge fund until the events that gave rise to this case. Albert Goodman is a wealthy investor who knew of Dohmen because of his newsletters. The two met and became friends in 1999. Goodman had never invested in a hedge fund until the events that gave rise to this case.

In 2010, Dohmen decided to start a hedge fund. He formed the Croesus Fund, L.P. (the "Fund") as a Delaware limited partnership. Dohmen also formed Macro Wave Management, LLC to serve as the Fund's general partner. Macro Wave had exclusive control and management of the Fund, and Dohmen, in turn, was the sole member and manager of Macro Wave. Under the Fund's limited partnership agreement, investors in the Fund became limited partners.

In September 2011, Dohmen emailed Goodman, asking Goodman to invest in the Fund. Goodman agreed and signed a Fund subscription agreement shortly thereafter. On November 14, 2011, Goodman made his first $500,000 investment in the Fund (the "First Investment"). By the date of the First Investment, Dohmen had not made any concrete representations regarding whether other investors had joined the Fund. In fact, Dohmen had disclosed that he had only spoken with two

people about the Fund at that point. In November 2011, Dohmen invested $200,000 of his own money in the Fund.

After Goodman made the First Investment, Goodman specifically inquired about other investors. On November 20, 2011, Dohmen made the following statements in an email: "We have not yet officially announced the start of the fund. You are one of the few who knows it exists. *There are several other close friends I told about the fund that are now liquidating some assets in order to participate.*"[2] Goodman understood the italicized statement to mean that more investors were coming in, which was important to Goodman. But, in fact, no friends of Dohmen's were liquidating assets to invest in the Fund, and Dohmen was well aware of this.

On November 26, 2011, Goodman again inquired as to "how big [the Fund] will be."[3] Dohmen replied:

> Re the question of 'how big it will be,' I can only say that it will probably not be very big, depending on how it is defined. . . . Until we get a good track record, I only want investors I know, or who have been referred by friends, and that I have spoken to. They will all be 'accredited investors.' My first goal is to get to 20–30 million. If the fund does well, perhaps we can get to 100 mio by end of 2012. Those are my parameters right now, which of course can always change depending on conditions. We haven't even announced the fund yet, officially. Only a few of my good friends know about it.[4]

---

[2] Certification Request at 5.
[3] *Id.*
[4] *Id.*

Goodman wired another $500,000 on December 9, 2011 (the "Second Investment"), but Goodman continued to ask about other investors. On December 13, Dohmen stated that "[p]ersonal friends that have expressed interest are now reviewing the documents."[5] This was knowingly false. The Second Investment was invested in the Fund on December 14, 2011. Dohmen contacted five people other than Goodman regarding the Fund, but none committed to investing.

On May 14, 2012, Dohmen informed Goodman for the first time that there were only two investors in the Fund. Goodman was shocked, and Dohmen offered to allow Goodman to withdraw his investments. Goodman did not withdraw.

As of June 30, 2012—when Goodman could have withdrawn—the net asset value ("NAV") of the Fund was $804,021.26. By November 5, 2012, the NAV was down to about $500,000, and at the end of December 2012, the NAV was about $357,000. In July 2014, the NAV was down to $100,000. Any remaining NAV has been used by Dohmen to pay for this litigation. Goodman has not received any portion of his investment back.[6]

---

[5] *Id.* at 6.
[6] Goodman also paid about $30,000 in Fund administrative fees and costs, startup costs, and various other expenses.

II.

In January 2015, Goodman filed suit against Dohmen alleging common law fraud by misrepresentation, securities fraud, and breach of fiduciary duty.[7] Goodman claimed Dohmen misrepresented that the Fund would have other investors. Goodman also claimed Dohmen misrepresented that the Fund was a long-term investment and concealed the Fund's active investment strategy.

After a bench trial, the district court found against Goodman on the common law fraud and securities law fraud claims. The court found that, at the time of the First Investment, Dohmen had not made any knowingly false statements or concealed any material facts. But the court held that, at the time of the Second Investment, Dohmen misrepresented the Fund's actual number of investors in his November 20, 2011 email to Goodman. The court also found that Dohmen had acted with knowledge and scienter, and that Goodman relied on Dohmen's misrepresentation. But Goodman did not satisfy a final requirement of a common law fraud or securities fraud claim—loss causation. As the district court held:

> [T]he Fund started declining in value from its inception, but the evidence fails to show that the decline was the result of anything other than market forces and/or trading decisions. Thus, even if there had

---

[7] The district court found that Dohmen, as the human controller of Macro Wave, owed a fiduciary duty of loyalty to Goodman. *Goodman v. Dohmen*, 2017 WL 3319110, at *18 (C.D. Cal. Aug. 3, 2017) (citing *In re USA Cafes, L.P., Litig.*, 600 A.2d 43, 49–50 (Del. Ch. 1991); *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180–81 (Del. Ch. 1999); *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 671–72 (Del. Ch. 2012)).

been more outside investors, [Goodman's] investment would have declined by the same amount. Therefore, [Goodman] cannot show proximate cause or loss causation with respect to the false statement that close friends of [Dohmen] were liquidating assets to invest in the Fund.[8]

All was not lost for Goodman, however. When it came to his last claim—breach of fiduciary duty—the district court ruled in Goodman's favor. In his November 20, 2011 email, when Goodman was considering the Second Investment, Dohmen misrepresented the number of Fund investors. The district court characterized Dohmen's misrepresentation as one made "when seeking [limited] partner action."[9] As a result, the district court, quoting from our decision in *Malone v. Brincat*,[10] relieved Goodman from proving reliance or causation to support his breach of fiduciary duty claim:

> An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages. Instead, such actions require the challenged disclosure to have a connection to the request for shareholder action. The essential inquiry in such an action is whether the alleged omission or misrepresentation is material. Materiality is determined with respect to the shareholder action being sought.[11]

---

[8] *Id.* at *15.
[9] *Id.* at *19.
[10] 722 A.2d 5 (Del. 1998).
[11] *Goodman*, 2017 WL 3319110, at *19 (quoting *Malone*, 722 A.2d at 12).

The parties did not dispute the materiality of the misrepresentation. And Goodman demonstrated that the presence of other investors was important to him when deciding whether to make the Second Investment. Thus, the district court awarded Goodman compensatory damages equal to a portion of the lost value attributable to the Second Investment.[12]

Dohmen appealed to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit rejected all of Dohmen's arguments on appeal except one— whether the district court should have required Goodman to prove loss causation because Dohmen did not make the material misrepresentation in connection with a request for limited partner action. The Ninth Circuit certified the question before us to resolve the final issue in the appeal.[13] We review certified questions of law *de novo*.[14]

### III.

Before Goodman made the First Investment and became a limited partner in the Fund, securities laws and the common law of fraud regulated solicitation of investments in the Fund. After Goodman made the First Investment and became a

---

[12] Goodman could not recover for the First Investment because he invested before Dohmen's misrepresentation. And the damage award did not include losses incurred after June 30, 2012, the date on which Goodman could have mitigated his damages by withdrawing his investments.

[13] Certification Request at 11–12.

[14] *United States v. Sanofi-Aventis U.S. LLC*, 226 A.3d 1117, 1123 (Del. 2020).

8

limited partner, the Fund's limited partnership agreement imposed new requirements. Because the agreement did not disclaim the fiduciary duty of loyalty,[15] the general partner assumed contractual and fiduciary duties.[16] As a fiduciary, and absent contractual modification, a general partner's duties to limited partners and the partnership parallel those exercised by directors of Delaware corporations.[17]

Directors of Delaware corporations owe duties of care and loyalty to the corporation and its stockholders.[18] These duties "do[] not operate intermittently" but are "the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided."[19] Relevant to this action, a director's fiduciary duties of care and loyalty apply when directors communicate with stockholders. A director's specific disclosure obligations are defined by the context in which the director communicates, as are the remedies available when a director fails to meet his obligations.[20] One context is a communication associated

---

[15] The limited partnership agreement is not part of the record before us. We refer to the district court's finding that the limited partnership agreement did not waive the fiduciary duty of loyalty. *Goodman*, 2017 WL 3319110, at \*18–19.

[16] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002) ("[A] general partner owes the traditional fiduciary duties of loyalty and care to the limited partnership and its partners . . . .").

[17] *See id.*; *Feeley*, 62 A.3d at 661 ("[T]here has never been any serious doubt that the general partner of a Delaware limited partnership owes fiduciary duties."); *Boxer v. Husky Oil Co.*, 429 A.2d 995, 997 (Del. Ch. 1981) ("[I]t is clear that the general partner in a limited partnership owes a fiduciary duty to the limited partners.").

[18] *See Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

[19] *Malone*, 722 A.2d at 10.

[20] *Id.* ("Although the fiduciary duty of a Delaware director is unremitting, the exact course of conduct that must be charted to properly discharge that responsibility will change in the specific

9

with a request for stockholder action.[21]  Stockholder action has included approving

corporate transactions (mergers, sale of assets, or charter amendments) and making

investment decisions (purchasing and tendering stock or making an appraisal

election).[22]  When directors request discretionary stockholder action, they must

disclose fully and fairly all material facts within their control bearing on the

request.[23]  This application of the fiduciary duties of care and loyalty is referred to

as the "fiduciary duty of disclosure."  Directors breach their fiduciary duty of

disclosure when the "alleged omission or misrepresentation is material."[24]

When directors seek stockholder action and breach their fiduciary duty of

disclosure, a stockholder can seek equitable relief or damages.[25]  In this context, we

have characterized a fiduciary's damages liability as "per se."[26]  That is, when

directors seek stockholder action, and the directors fail to disclose material facts

bearing on the decision, a beneficiary need not demonstrate other elements of

---

context of the action the director is taking with regard to either the corporation or its shareholders."); *see* Lawrence A. Hamermesh, *Calling Off the Lynch Mob: The Corporate Director's Fiduciary Disclosure Duty*, 49 Vand. L. Rev. 1087, 1146, 1169 (1996) (discussing the duty of disclosure in "four paradigm contexts" and that remedies "should proceed flexibly" within the specific context).
[21] Like the Certification Request, we use "stockholder action" interchangeably with "limited partner action."
[22] *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013).
[23] *Malone*, 722 A.2d at 9; *Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989).
[24] *Malone*, 722 A.2d at 12.
[25] *See Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 138 (Del. 1997).
[26] *Id.* at 141 (citing *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del. 1993)).

10

proof—reliance, causation, or damages.[27] As we discuss later, however, the per se damages rule presumes only nominal damages. It does not extend to compensatory damages.

Another context is a communication not associated with a request for stockholder action, such as when directors make periodic financial disclosures required by securities laws.[28] In this context, the fiduciary duty of disclosure does not apply. But under the board's duties of care and loyalty, the directors must still deal honestly with stockholders.[29] And to state a claim for breach of fiduciary duty in this context, the directors must have knowingly disclosed false information.[30] By requiring scienter, we have sought to distinguish innocent or negligent disclosure violations from those involving an intent to mislead stockholders.[31] Also, the per se damages rule does not apply in this space.[32]

---

[27] *See Malone*, 722 A.2d at 12 ("An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages."). Typically, when seeking damages for breaching the duty of disclosure, a plaintiff must show that the damages are "logically and reasonably related to the harm or injury for which compensation is being awarded." *In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 766, 773 (Del. 2006). In other words, in tort parlance, the plaintiff must show reliance, causation, and damages.

[28] *See Malone,* 722 A.2d at 14*; In re Wayport*, 76 A.3d at 315.

[29] *Malone*, 722 A.2d at 10. ("The director's fiduciary duties include the duty to deal with their stockholders honestly.").

[30] *Id*. at 9 ("[D]irectors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty.").

[31] *See Zirn v. VLI Corp.*, 681 A.2d 1050, 1061–62 (Del. 1996) (finding that Section 102(b)(7) shielded directors from liability for disclosure violations that resulted from good faith errors).

[32] *See Malone*, 722 A.2d at 12 (eliminating the reliance, causation, and damages elements for breach of fiduciary duty claims only when the disclosure is made in connection with a request for stockholder action).

A.

In a short opening brief, Dohmen argues our decisions have limited requests for stockholder action—and by analogy limited partner action—to voting rights and other fundamental rights of ownership. Thus, according to Dohmen, his emails to Goodman in response to Goodman's inquiries before making the Second Investment do not qualify as a request for limited partner action triggering per se damages.

Goodman responds that our decisions interpreting requests for stockholder action are not limited to voting or ownership rights. According to Goodman, Dohmen's knowing and deliberate breach of the fiduciary duty of disclosure warrants a strong response to deter future misconduct by fiduciaries. Invoking an analogy to presumed damages in defamation cases, Goodman says we should use the materiality of the misrepresentations as a surrogate for reliance and causation. And, Goodman claims we can limit our answer to the facts of this dispute—an intentional misrepresentation involving a single general partner and a single limited partner.

B.

We start with our decision in *Malone v. Brincat.* In *Malone*, the stockholder plaintiffs filed a complaint against a corporation's board of directors claiming that the defendants breached their fiduciary duty of disclosure. According to the complaint, the director defendants intentionally overstated in public filings the

12

company's financial condition, which caused a multibillion-dollar decline in the corporation's market value. The Court of Chancery dismissed the complaint, reasoning that the director defendants did not have a fiduciary duty of disclosure absent a request for stockholder action. The court also held that the federal securities laws provided a remedy for inaccurate disclosures to the marketplace.

Our Court affirmed dismissal of the case, but reversed the Court of Chancery's dismissal with prejudice and allowed the plaintiffs to replead their complaint. First, we noted that the dispute did not involve the fiduciary duty of disclosure. That duty was not in play because the disclosures were part of periodic financial disclosures required under federal law unaccompanied by a request stockholder action. But, the directors were not off the hook. We went on to hold that directors who knowingly disseminate materially false information could be liable for breach of fiduciary duty, even if the false disclosures were not part of a request for stockholder action.

Relevant to the present dispute, we observed that, in the request for stockholder action context, where there is a fiduciary duty of disclosure, the stockholder need not prove all the elements of a misrepresentation claim to be entitled to relief:

> An action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action does not include the elements of reliance, causation and actual quantifiable monetary damages. Instead, such actions require the challenged disclosure to have a connection to the request for shareholder action. The essential inquiry in such an action is whether the alleged omission

13

or misrepresentation is material. Materiality is determined with respect to the shareholder action being sought.[33]

*Malone* addressed the dividing line between communications associated with requests for stockholder action and other communications. In the Court of Chancery, several cases have also addressed the issue. In *Alessi v. Beracha*, a corporation initiated a voluntary buy-sell program with reduced fees for stockholders with less than 100 shares.[34] Alessi sold her shares through the program. Unbeknownst to Alessi, the corporation was at the same time negotiating its sale at a stock price higher than the buy-sell program in a deal announced less than two weeks after the program ended. Alessi sued the corporation's directors for breach of fiduciary duty for failing to disclose material information about the sale. In response to the directors' argument in their motion to dismiss that Alessi's claim depended on a "fraud on the market" theory not recognized under Delaware law, the court found the fraud on the market theory was simply a rebuttable presumption of reliance. Because the court held that the buy-sell program "was a 'request' for this group of shareholders to take action," *Malone* excused proof of reliance.[35] Thus, the claim did not depend on the fraud on the market theory.

---

[33] *Malone*, 722 A.2d at 12 (footnotes omitted).
[34] 849 A.2d 939, 944 (Del. Ch. 2004).
[35] *Id*.

In *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, an LLC member claimed that other members and the LLC managers made false disclosures as part of capital calls to the members.[36] The plaintiff tried to squeeze its alleged disclosure violations into the request for stockholder action paradigm. Dismissing the argument, the Court of Chancery held that the disclosures associated with periodic capital calls did not fit because the members had a contractual obligation to respond to the requests.[37] In other words, only misrepresentations associated with requests for discretionary action trigger the fiduciary duty of disclosure.[38]

The Court of Chancery's decision in *Latesco, L.P. v. Wayport, Inc.* discusses stockholder action and the fiduciary duty of disclosure in the context of an individual stockholder transaction.[39] In *Wayport*, certain corporate insiders sought to invoke their contractual rights of first refusal in the sale of a minority holder's units while not disclosing material facts relating to a pending transaction.[40] The court declined to characterize the transaction as a request for stockholder action. Instead, the court viewed the dispute through the lens of common law fraud "as applied to transactions

---

[36] 854 A.2d 121, 137 (Del. Ch. 2004).
[37] *Id.* at 131, 158–59.
[38] *Id.* at 153, 156–59.
[39] 2009 WL 2246793 (Del. Ch. July 24, 2009).
[40] The stockholder was asked to make additional shares available for sale to insiders, beyond the shares negotiated with the third party. *Id.* at *5.

15

between corporate insiders and minority stockholders."[41] The Court of Chancery explained why it rejected the stockholder action paradigm:

> The rule requiring calls for stockholder action to be accompanied by full and fair disclosure of all material information regarding the decision presented to the stockholders is premised on the collective action problem that stockholders, in the aggregate, are faced with when asked to vote or tender their shares. In such a situation, it would be impractical, if not impossible, for each stockholder to ask and have answered by the corporation its own set of questions regarding the decision presented for consideration. In the absence of a fiduciary duty by the corporation and its directors to engage in full and fair disclosure, stockholders would thus be forced to make a decision in an information vacuum. These same factors do not, however, come into play when the corporation asks a stockholder as an individual to enter into a purchase or sale. There, the stockholder may refuse to do so until he is satisfied the corporation has given him sufficient information to evaluate the decision presented to him.[42]

## C.

We agree with the Court of Chancery's analysis in *Wayport* and its decision not to impose an affirmative fiduciary duty of disclosure for individual transactions. Unlike the collective action problem when a large number of stockholders are considering a transaction and depend on directors to disclose material facts bearing on the decision, Goodman had direct access to the Fund's general partner to explore

---

[41] *Id.*

[42] *Id.* at *6. In a footnote supporting the court's analysis, the court stated that it agreed with the Illinois Appellate Court's analysis of Delaware law in *Sims v. Tezak* "that a call for an individual stockholder to sell his shares does not, without more, qualify as a call for stockholder action." *Id.* n.18 (citing *Sims*, 694 N.E.2d 1015, 1018-19 (Ill. App. Ct. 1998)); *see* Hamermesh, note 21, at 1144 (discussing the information asymmetry between directors and stockholders).

the Second Investment.  Goodman had the Fund's private placement memorandum.[43]

He also received replies to emails asking questions before making the Second

Investment.  To require affirmative state law disclosures in individual transactions

involving limited partnerships would increase the cost of those transactions, lead to

burdensome disclosure requirements, and generate another avenue of litigation when

other remedial measures are available.  Here, although Dohmen did not have an

affirmative duty to disclose the number of investors interested in the Fund, when he

chose to speak he had to do so honestly.[44]  Even though part of Goodman's damages

claim ultimately failed for lack of causation, misrepresenting the number of investors

in response to Goodman's questions breached Dohmen's fiduciary duty of loyalty

to Goodman.

## D.

Under the stipulated facts, Dohmen did not have a fiduciary duty of disclosure.

But even if he did, in response to the second part of the certified question, Goodman

would still have to prove reliance and causation to recover the compensatory

damages sought in his case.  In *Malone*, the Court relied on several cases to support

---

[43] *Goodman*, 2017 WL 3319110, at *3.
[44] *See, e.g.*, *Malone*, 722 A.2d at 10; *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 52 (Del. Ch. 2015) ("[I]f a party . . . chooses to speak, then it cannot lie.") (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).

the proposition that the per se damages rule applies when stockholder action is requested. Footnote 27 states:

> *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d at 1163; *In re Tri–Star Pictures, Inc. Litig.*, 634 A.2d at 327 n.10 and 333. *Loudon v. Archer–Daniels–Midland Co.*, 700 A.2d at 142 ("where directors have breached their disclosure duties in a corporate transaction . . . there must at least be an award of nominal damages.").[45]

A review of these decisions, and a decision after *Malone*, shows that the per se damages rule is limited to nominal damages, and only in specific circumstances.

Our review begins with the *Tri–Star* decision and its reference to the per se damages rule. In *Tri–Star*, the stockholder plaintiffs filed a class action that challenged a business combination under an entire fairness standard of review. The Court of Chancery granted the defendants' motion for summary judgment for failure of proof because, according to the court, a claim for breach of fiduciary duty requires proof of special damages. In reversing, our Court held that, when the board sought stockholder approval of an improperly manipulated transaction implicating a stockholder's financial or voting rights, "existing law and policy have evolved into a virtual *per se* rule of damages for breach of the fiduciary duty of disclosure."[46]

---

[45] *Malone*, 722 A.2d at 10 n.27.

[46] *In re Tri–Star*, 634 A.2d at 333. The Court in *Cinerama, Inc. v. Technicolor, Inc.*, quoting from *Tri–Star*, repeated the same point. 663 A.2d 1156, 1163 (Del. 1995) (quoting *Tri–Star*, 634 A.2d at 333).

18

To assess the reach of this statement, it is important to understand the arguments made in the appeal. The defendants moved for summary judgment because the stockholder plaintiffs did not allege special damages for breach of the duty of loyalty—a predicate for a successful claim. Quoting from another Supreme Court decision involving a breach of the duty of loyalty, we observed that special damages need not be alleged when a fiduciary acts disloyally. Even if the beneficiary is not harmed directly:

> [T]he absence of specific damage to a beneficiary is not the sole test for determining disloyalty by one occupying a fiduciary position. It is an act of disloyalty for a fiduciary to profit personally from the use of information secured in a confidential relationship, even if such profit or advantage is not gained at the expense of the fiduciary. The result is nonetheless one of unjust enrichment which will not be countenanced by a Court of Equity.[47]

Thus, in the *Tri–Star* case, the stockholders did not have to allege that they suffered damages at the hands of a disloyal fiduciary. The stockholders could pursue injunctive relief or an unjust enrichment claim against the fiduciary. We also noted, however, that if the stockholder plaintiff sought more than nominal damages for the breach of fiduciary duty of loyalty, proof using expert testimony would have to replace "hypothetical estimates" of actual damages.[48]

---

[47] *Tri–Star*, 634 A.2d at 334 (quoting *Oberly v. Kirby*, 592 A.2d 445,463 (Del. 1991)).
[48] *Id.* n.18.

19

The Court in *Loudon v. Archer–Daniels–Midland Co.* addressed the scope of the per se damages rule of *Tri–Star* and returned to the nominal damages point.[49] In *Loudon*, a stockholder filed a complaint the day after the corporation's annual meeting alleging breaches of the directors' fiduciary duty of disclosure when soliciting proxies for an election. The plaintiff sought to unseat the board and also claimed damages. The Court of Chancery granted the defendants' motion to dismiss, holding that the plaintiff did not properly raise the election claims, and the challenged disclosures were unnecessary or not required. We affirmed on appeal.

After noting that most of the complaint was moot because the annual meeting had already occurred and the plaintiff did not seek injunctive relief, our Court discussed the per se damages rule in the *Tri–Star* decision:

> *Tri–Star* stands only for the narrow proposition that, where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages. *Tri–Star* should not be read to stand for any broader proposition.[50]

To emphasize the limited application of per se damages, our Court stated in conclusion:

> We hold that under Delaware law there is no *per se* rule that would allow damages for all director breaches of the fiduciary duty of disclosure. The dictum in *Tri–Star* is confined to the facts of that case. Damages will be available only in circumstances where disclosure

---

[49] 700 A.2d 135 (Del. 1997).
[50] *Id.* at 142.

violations are concomitant with deprivation to stockholders' economic interests or impairment of their voting rights.[51]

After our *Malone* decision, where we reaffirmed the per se damages rule when stockholder action is requested, we next examined the rule in *In re J.P. Morgan Chase & Co. Shareholder Litigation*.[52] In that case, the stockholders of an acquiring corporation alleged a breach of fiduciary duty by its board for approval of a merger with an excessive premium. The plaintiffs also asserted a breach of duty of disclosure claim for a misleading proxy statement recommending stockholder approval of the merger. The Court of Chancery dismissed the overpayment claim for failure to make a demand under Rule 23.1. It also dismissed the disclosure claim under Rule 12(b)(6) for failure to allege monetary harm to the class—the sole remedy plaintiffs sought.

The plaintiffs appealed only the disclosure claim. They claimed nominal and compensatory damages. Our Court first addressed plaintiffs' reliance on *Tri–Star*, the per se damages rule, and compensatory damages:

> The plaintiffs rely upon *In re Tri–Star Pictures, Inc.,* for the proposition that shareholders may recover compensatory damages where a corporate transaction that caused impairment to their economic or voting rights, is accomplished by means of the directors' breach of their duties of disclosure. But *Tri–Star* does not help the plaintiffs here. This

---

[51] *Id.* at 146–47. In a footnote, the Court also stated that "[w]e do not decide whether or not a pleader must also allege any other elements (*e.g.,* negligence, gross negligence, intentional misconduct or reliance) to state a claim for damages based on disclosure violations. Those issues are not before us, and we decide only the case before us." *Id.* at 142 n.28.
[52] 906 A.2d 766 (Del. 2006).

Court has previously held, and the Vice Chancellor correctly observed, that "*Tri–Star* stands only for the narrow proposition that where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of *nominal* damages." The claim being addressed at this point, however, is for compensatory, not nominal, damages. *Tri–Star* does not speak to the plaintiffs' claim for compensatory damages in this case.

We conclude, for these reasons, the Court of Chancery did not err in dismissing the plaintiffs' proxy disclosure claim insofar as it is the predicate for their claim for compensatory damages.[53]

Thus, if there was any doubt after *Loudon*, our *J.P. Morgan Chase* decision limited the per se damages rule to nominal damages, and only when the breach of the duty of disclosure "caused impairment to the economic or voting rights of stockholders."[54]

The Court then turned to plaintiffs' claim for nominal damages. The plaintiffs focused on footnote 27 in *Malone* and its quotation from *Loudon* that reads, "where directors have breached their disclosure duties in a corporate transaction . . . there must at least be an award of nominal damages."[55] The plaintiffs noted that *Malone* quoted *Loudon* as support to excuse proof of reliance, causation, and damages. Thus, plaintiffs argued, *Malone* eliminated any "*Loudon*-created limitation upon the scope of *Tri–Star's* rule of 'virtual *per se* entitlement to nominal damages' for any

---

[53] *Id.* at 773-74.
[54] *Id.* at 773.
[55] *Id.* at 775 (quoting *Malone*, 722 A.2d at 12 n.27 (quoting *Loudon*, 700 A.2d at 142)).

violation of the duty of disclosure."[56] Stated differently, to recover nominal damages in a breach of the fiduciary duty case, plaintiffs no longer needed to show that the breach impaired the economic or voting rights of stockholders. We rejected that argument as well:

> *Tri–Star* stands only for the narrow proposition that, where directors have breached their disclosure duties in a corporate transaction that has in turn caused impairment to the economic or voting rights of stockholders, there must at least be an award of nominal damages. *Tri–Star* should not be read to stand for any broader proposition.
>
> Nothing in our decision in *Malone v. Brincat* was intended, or should be read, to undo the limitation, articulated in *Loudon*, of the circumstances where nominal damages will be recoverable as a consequence of an adjudicated violation of the fiduciary duty of disclosure.[57]

E.

Our precedent—from *Tri–Star* and *Loudon* through *Malone* and *J.P. Morgan Chase*—leads us to conclude that the per se damages rule, and how it operates to excuse proof of reliance, causation, and damages, only applies if there is impairment of economic or voting rights and, if so, only applies to nominal damages. The rule was born of the *Tri–Star* case, where our Court allowed a claim to go forward against a fiduciary even though the plaintiff had not been harmed by the alleged breach of the fiduciary duty of loyalty. After *Tri–Star*, our *Loudon* decision limited the scope

---

[56] *Id.*
[57] *Id.* at 776.

23

of the per se damages rule. It covered only breaches of the fiduciary duty of disclosure involving requests for stockholder action that impair the economic or voting rights of investors. We also held in *Loudon*, in hindsight perhaps not as directly as might have been done, that the per se damages rule only covered nominal damages.

If there was any doubt about this interpretation, we dispelled that doubt in *J.P. Morgan Chase*, where we held that "*Tri–Star* does not speak to the plaintiffs' claim for compensatory damages,"[58] meaning that the per se damages rule does not apply to damages other than nominal damages. Thus, to recover compensatory damages, an investor who proves a breach of the fiduciary duty of disclosure must prove reliance, causation, and damages.

IV.

Fundamentally, this is not a duty to disclose case—it is a breach of the duty of loyalty case for failure to tell the truth. We answer the certified question, as reframed, as follows:

> Under the stipulated facts of this dispute, the general partner's request to a limited partner for a one-time capital contribution does not constitute a request for limited partner action such that the general partner has a fiduciary duty of disclosure. Even if the general partner had a fiduciary duty of disclosure, if the general partner failed to disclose material information in connection with the request, the limited partner cannot recover compensatory damages without proving reliance and causation.

---

[58] *Id.* at 774.

24